IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01229-LTB

**MICHAEL WAYNE BINGHAM**,
Native American "Chocta" National - "Texan" Stateless - Nonresident Non-Taxpayer
Transient Choctaw,

      Applicant,

v.

**TRAVIS TRANI**, Warden, CDOC, and
**THE ATTORNEY GENERAL OF THE STATE OF COLORADO,**

      Respondents.

---

## ORDER TO DISMISS

---

Applicant, Michael W. Bingham, is a prisoner in the custody of the Colorado Department of Corrections (CDOC).  Applicant initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, after which he filed an amended application, ECF No. 10, at the Court's direction.  His application challenges the validity of his convictions in case 01CR430 in the Adams County District Court.

On July 28, 2015, Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). Respondents submitted a Pre-Answer Response on August 28, 2015 (ECF No. 18). Applicant filed a Reply on September 4, 2015 (ECF No. 19).

On September 28, the Court issued an Order directing Respondents to file a Response as to the exhausted claims.  Respondents submitted a Response on October

7, 2015 (ECF No. 22). Applicant filed a Traverse on October 20, 2015 (ECF No. 23).

The Court must construe the Application liberally because Applicant is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not "assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the habeas corpus action.

## A. Relevant Factual and Procedural History

Evidence at trial established that Applicant severely beat and sexually assaulted his wife and a jury found him guilty of several crimes sexual assault, second degree assault, third degree assault, and harassment-stalking. The trial court sentenced him to indeterminate and determinate sentences for a total of forty-eight years to life on the sexual assault charges and a cumulative twelve-year term, to be served consecutively, on the other counts. The conviction and sentences were affirmed on appeal. *People v. Bingham* (Colo. App. No. 01CA2483, Jan. 29, 2004) (not published pursuant to C.A.R. 35(f)).

On March 18, 2008, defendant filed a *pro se* Crim. P. 35(a) motion seeking to correct an illegal sentence. The court granted the motion, merged the sexual assault convictions, and amended the *mittimus* accordingly.

On September 15, 2008, defendant filed a *pro se* Crim. P. 35(a) motion arguing that the CDOC had improperly calculated his parole eligibility date (PED) following the issuance of the amended *mittimus*. The district court denied the motion, finding that the appropriate avenue for requesting relief was to file a complaint under C.R.C.P. 106 or a motion for declaratory judgment under C.R.C.P. 57.

On May 1, 2009, Applicant filed a "Motion to Amend Mittimus," raising the same

issue regarding his parole eligibility date that he had raised in his earlier motion. The district court denied the motion. Applicant appealed and the CCA affirmed the lower court. *People v. Bingham* (Colo. App. No. 09CA1047, March 11, 2011) (unpublished).

Between 2010 and 2013, Bingham filed a series of post-conviction motions wherein he asserted the following claims: 1) the Attorney General's office was estopped from contesting Bingham's assertions because it had failed to respond to Bingham's "Affidavit of Negative Averment"; 2) Bingham is a non-citizen national of the United States and therefore was not subject to the district court's jurisdiction; 3) the district court did not have subject matter jurisdiction because the United States has been under martial law since 1860 or 1861, allegedly rendering the Colorado Criminal Code invalid; and 4) the district court lacked jurisdiction because the district court judge and the prosecutors had failed to take the proper oaths, relinquished their citizenship and became foreign entities, agencies, or states when they took the oaths that they did, and failed to register as agents of foreign principals as allegedly required. The district court summarily denied Bingham's motions and the CCA affirmed this disposition in *People v. Bingham* (Colo. App. No. 13CA2215, Dec. 18, 2014) (unpublished).

Applicant filed the instant action on June 11, 2015 wherein he raises essentially the same claims he raised in his latest post-conviction motion. For the reasons set forth below, the Application for Writ of Habeas Corpus will be dismissed.

### B. Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a superstate appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v.*

*Harris*, 465 U.S. 37, 41 (1984).  "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the [applicant's] custody simpliciter."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Specifically, the Habeas Corpus Statute, 28 U.S.C. § 2254(d), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Bingham bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Bingham seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.

4

Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*,  562 U.S. at 103.

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010) where the

Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of

habeas corpus to a defendant who was retried for murder following the trial judge's grant

of a mistrial after the jury had deliberated for at least four hours following a relatively short,

and far from complex, trial.  The Michigan Supreme Court had concluded there was no

violation of the Double Jeopardy Clause because the trial court exercised its sound

discretion.  The federal district court granted a writ of habeas corpus and the Sixth Circuit

affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse

of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us.  That question is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

*Lett*, 559 U.S. at 772-73.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial-was right or wrong.  The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial.  The Michigan Supreme Court declined to accept this confession of error, and in any event-for the reasons we have explained—**whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id.* at 778, n. 3 (emphasis added) (internal citation omitted).  *See also Schriro v. Landrigan*,

550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough

that a federal habeas court, in its independent review of the legal question, is left with a

'firm conviction' that the state court was 'erroneous.' ").

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982).  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

For federal habeas claims not adjudicated on the merits in state-court proceedings, the Court must exercise its independent judgment.  *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).  Any state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence.  *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999) (applying § 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon the claim, even though the claim was not adjudicated on the merits by the state court).

### C.  Applicant's Claims

Applicant's claims all amount to the contention that the Colorado courts did not have jurisdiction over him because he is a Native American Chocktaw Indian who is neither a resident nor a statutory citizen.  Absence of jurisdiction in the convicting court is a proper

basis for federal habeas relief cognizable under the due process clause.  *See, e.g., Danforth v. Minnesota*, 552 U.S. 264 (2008) (recognizing that, "[o]riginally, criminal defendants whose convictions were final were entitled to federal habeas relief only if the court that rendered the judgment under which they were in custody lacked jurisdiction to do so."); *Lonchar v. Thomas*, 517 U.S. 314, 322 (1996) (observing that a writ under § 2254 "has evolved into an instrument that now demands ... conviction by a court of competent jurisdiction").

In its review of his claims, the CCA made the following determinations.

IV. Jurisdictional Claims

Bingham next appears to contend that (1) the district court did not have personal jurisdiction over him because he is a "foreign sovereign" who has abandoned his "statutory citizenship"; (2) the district court did not have subject matter jurisdiction because its jurisdiction is limited to commercial matters involving "artificial persons"; and (3) the district court lacked jurisdiction because the district court judge and the prosecutors had failed to take the proper oaths, relinquished their citizenship and became foreign entities, agencies, or states when they took the oaths that they did, and failed to register as agents of foreign principals as allegedly required.

Although Bingham's motions are presented under a variety of titles, at least one is presented as a Crim. P. 35(a) motion.  Because Crim. P. 35(a) is the proper mechanism to challenge a prior sentence on jurisdictional grounds, we conclude that Bingham's filings are cognizable under Crim. P. 35(a).  We further conclude, however, that each of Bingham's contentions is meritless.

. . .

B. Personal Jurisdiction

With respect to Bingham's assertions concerning personal jurisdiction, a person is subject to prosecution in Colorado if he or she commits an offense either wholly or partly within the state.  See § 18-1-201(1)(a), C.R.S. 2014; People v. Jones, 140 P.3d 325, 328 (Colo. App. 2006).   The defendant's physical presence in court is sufficient to confer jurisdiction over that person.  *Jones*, 140 P.3d at 328.

Here, Bingham was charged with a criminal offense committed within Colorado, and he appeared, was prosecuted, and was convicted in the district court. Accordingly, the district court properly exercised jurisdiction over him. *See id.* at 328-29.

Bingham's arguments to the contrary are unavailing, as other courts have repeatedly held. *See, e.g.*, *United States v. Masat*, 948 F.2d 923, 934 (5th Cir. 1991) (holding that a defendant's argument that the district court lacked jurisdiction because of his status as a "non-citizen," "non-resident," and "freeman" was "frivolous"); *United States v. Schmitt*, 784 F.2d 880, 882 (8th Cir. 1986) (concluding that the defendants' arguments that the court lacked personal jurisdiction over them because they were "Natural Freemen" and not a "juristic identity" were "entirely frivolous").

C. Subject Matter Jurisdiction

We likewise reject Bingham's assertion that the district court lacked subject matter jurisdiction over this case. On appeal, Bingham appears to have abandoned his theory that the Colorado Criminal Code is invalid because the United States has been under martial law since 1860 or 1861. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007) (noting that any issues raised in a defendant's postconviction motion but not reasserted on appeal were abandoned). Instead, he argues that the courts only have subject matter jurisdiction over commercial disputes between "artificial persons." Because this argument raises an alleged jurisdictional issue, we will consider it despite the fact that it does not appear to have been raised in the district court. *See Minto v. Lambert*, 870 P.2d 572, 575 (Colo. App. 1993) ("[S]ubject matter jurisdiction cannot be waived, and can be raised at any time.") (citation omitted).

Notwithstanding Bingham's assertions to the contrary, the Colorado district courts are courts of general jurisdiction, with original jurisdiction over all criminal cases. *See* Colo. Const. art. VI, § 9. Accordingly, we conclude that the district court had subject matter jurisdiction over Bingham's criminal case.

We are not persuaded otherwise by Bingham's assertion as to the limits of the district court's jurisdiction, for the reasons set forth by the many courts that have rejected the same or similar arguments. *See, e.g., Luster v. United States*, No. 5:03-CR-52 HL, 2010 WL 3927786, at *2 (M.D. Ga. Apr. 13, 2010) (unpublished report and recommendation) ("Petitioner's references to the Uniform Commercial Code and commercial transactions provided no relief from his criminal conviction and sentence . . . ."); *Jordan v. United States*, No. 1:07-CV-45 (WLS), 2007 WL 3005326, at *4 (M.D. Ga. Oct. 12, 2007) (unpublished order) ("[The defendant's] assertions of the applicability

of the Uniform Commercial Code, his personal sovereignty, and his copyright to his name are incorrect, irrelevant, and immaterial to his criminal prosecution, conviction and sentence."); *see also People v. Drew*, 250 P.3d 761, 761 (Colo. App. 2010) (holding that a defendant's argument that the capitalization of his name in the charging documents created an artificial person were "patently frivolous and without merit").

D. Oaths of Office and Registration

Finally, Bingham contends that his convictions are void for lack of jurisdiction because the district court judge and the prosecutors had failed to take the proper oaths, relinquished their citizenship and became foreign entities, agencies, or states when they took the oaths that they did, and failed to register as agents of foreign principals pursuant to the "'Trading with the Enemy Act' of 1934." This argument, too, is baseless.

The Colorado Constitution requires that judges and prosecutors take and subscribe an oath or affirmation before assuming the duties of their offices. Colo. Const. art. XII, § 8. Both judges and prosecutors must file their oaths of office with the secretary of state. Colo. Const. art. XII, § 9; § 20-1-201(3), C.R.S. 2014.

Bingham appears to concede that the judge and the prosecutors in his case properly took and filed their oaths of office as required under the Colorado Constitution. Citing 8 U.S.C. § 1481 (2012), however, he argues that "once an Oath of Office is taken 'citizenship' is Relinquished, thus every Judge, Prosecutor, Public Official becomes a Foreign Entity, Agency, or State." Bingham does not indicate the statutory language on which he relies for this argument, nor do we perceive anything in the cited statute that has any bearing on his argument or on this case generally.

Because we reject Bingham's assertion that 8 U.S.C. § 1481 rendered the judge and the prosecutors foreign agents, we need not address his contention that they were required to register as agents of a foreign principal before proceeding here.

ECF No. 18-18, pp. 5-11 (some internal citations omitted).

In reviewing Mr. Bingham's Application, the threshold question is whether there exists

clearly established federal law governing the decision that Applicant has challenged. *Lockyer*

*v. Andrade*, 538 U.S. 63, 71 (2003). The absence of clearly established federal law is

analytically dispositive in a § 2254(d)(1) analysis and requires denial of the application. *Carey*

*v. Musladin*, 549 U.S. 70 (2006).  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the *dicta* of the Supreme Court as of the time of the relevant state-court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is only Supreme Court holdings against which a state court decision may be tested.   Moreover, clearly established federal law may not be drawn from "general principles teased from precedent" but rather must be "construed narrowly and consist only of something akin to on-point holdings."  *Musladin*, 549 U.S. 70.

Here, Applicant fails to cite to any clearly established federal law as determined by the Supreme Court that supports his contention that Colorado did not have jurisdiction to punish him for the crimes he committed within its borders.  None of the cases cited by Applicant supports that contention.  In fact, the exact opposite is clearly established law.  It is black letter law that the individual states have the power to punish all violations of their criminal laws committed within it, whether by their own citizens or by citizens of other states.  *Mahon v. Justice*, 127 U.S. 700 (1888).   *See also United States v. Masat*, 948 F.2d 923, 934 (5th Cir. 1991) (rejecting as frivolous defendant's contention that the district court lacked personal jurisdiction because defendant was a freeman); *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting as frivolous defendants' contention that they were not citizens of the United States, but rather Free Citizens of the Republic of Minnesota); *United States v. Greenstreet*, 912 F. Supp. 224 (N.D. Tx 1996) ("Greenstreet provides no acceptable authority or cogent analysis to support his contention that this Court lacks personal jurisdiction over him.").

Nor has Applicant cited any clearly established federal law to support his contention that the judges and prosecutors in his action relinquished their nationality by taking their

oaths of office.

After reviewing the record, I find that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion.  Accordingly, I find that the determination of Applicant's claims by the Colorado Court of Appeals is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.  Consequently, the Court finds that Applicant is not entitled to federal habeas corpus relief.  Accordingly, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 10) filed by Applicant, Michael Wayne Bingham, is **DENIED**. It is

**FURTHER  ORDERED** that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.  It is

**FURTHER ORDERED** that this case is dismissed with prejudice.

DATED December 28, 2015.

BY THE COURT:


   s/Lewis T. Babcock
Lewis T. Babcock
Senior United States District Judge